# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JUSTIN DALE YOST, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 11-CV-593-TCK-PJC |
| | ) | |
| ROBERT PATTON, Director,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

Before the Court is the 28 U.S.C. § 2254 habeas corpus petition (Dkt. # 2) filed by Petitioner, a state prisoner represented by counsel. Respondent filed a response (Dkt. # 6) and provided the state court record necessary for resolution of Petitioner's claim (Dkt. # 8). Petitioner filed a reply (Dkt. # 9). For the reasons discussed below, the petition for writ of habeas corpus is denied.

## *BACKGROUND*

On July 11, 2008, around 12:00 p.m., Petitioner drove his pickup truck backwards on East 60 Road, 1.7 mile west of Commerce, Oklahoma. After traveling approximately 360 feet, Petitioner spun the truck around, throwing his fiancé, Sherrie Marie Koronis, from the bed of the truck onto the pavement, killing her. The cause of death was multiple blunt force injuries to her head, neck, and torso. Petitioner was taken to a local hospital for a legal blood draw. Petitioner had a blood alcohol level of 0.11.

Based on these facts, Petitioner was charged in Ottawa County District Court, Case No. CF-2008-235, with Manslaughter in the First Degree. (Dkt. # 6-4). A jury found Petitioner guilty and

---

[1]Petitioner is currently in custody at Lawton Correctional Facility, a private prison in Oklahoma. Therefore, the proper party respondent is Robert Patton, Director of the Oklahoma Department of Corrections. The Clerk shall note on the record the substitution of Robert Patton, Director, as party respondent in place of David C. Miller, Warden.

recommended a sentence of twenty-five (25) years imprisonment. Id. The trial court sentenced Petitioner in accordance with the jury's recommendation. Id. Attorneys Richard L. Yohn and Darcie K. Laue represented Petitioner at trial.

Petitioner, represented by attorney Wesley E. Johnson, perfected an appeal to the Oklahoma Court of Criminal Appeals (OCCA). (Dkt. # 8-1). Petitioner raised a single proposition of error with six sub-propositions, as follows,

> Proposition: It is asserted that Mr. Justin Yost was denied a fair trial due to the Ineffective Assistance of Trial Counsel in this matter. The failures of Trial Counsel that rendered his defense of Mr. Yost ineffective to the point of non-existence are thus:
>
> 1. Failure to prepare his case and file appropriate pre-trial motions;
>
> 2. Failure to properly prepare and conduct an effective voir dire of the prospective jurors;
>
> 3. Failure to analyze his case and prepare and present an opening statement;
>
> 4. Failure to analyze and understand the accident reconstruction testimony to be presented by the Oklahoma Highway Patrol witnesses in order to:
>    a: Prepare and present appropriate Motions in Limine;
>    b: Prepare and conduct appropriate voir dire of the Highway Patrol accident reconstruction and investigation witnesses for the purposes of attempting to limit their testimony;
>
> 5. Failure to enter into evidence the Toxicology Report of the deceased showing a 0.13% WV vitreous blood alcohol level and positive tests for Amphetamine, Hydrocodine, Pentazocine and Propoxyphene;
>
> 6. Failure to allow Mr. Yost to testify.

(Dkt. # 6-1). In an unpublished Summary Opinion, filed September 24, 2010, in Case No. F-2009-697, the OCCA affirmed Petitioner's judgment and sentence. (Dkt. # 6-4). The OCCA, relying on Strickland v. Washington, 466 U.S. 668, 687 (1984), found that Petitioner failed to show how he was

prejudiced by counsel's conduct. (Dkt. # 6-4 (citing Gilson v. State, 8 P.3d 883, 926 (Okla. Crim. App. 2000) (failure to show prejudice dooms any ineffective assistance claims))). The OCCA stated that Petitioner failed to explain how having "'effective' counsel . . . would have changed the outcome of this case." Id.

On September 20, 2011, Petitioner filed his petition for writ of habeas corpus (Dkt. # 2). Continuing to be represented by attorney Johnson, Petitioner states his claim, as follows:

> Ground One and Two Combined:   Mr. Justin Yost was denied a fair trial due to the Ineffective Assistance of Counsel and this Ineffective Assistance of Counsel at trial served to deprive Mr. Yost of a fair trial and a reliable verdict.

Id. Petitioner also raises the same six sub-claims as were raised on direct appeal. Respondent argues that the OCCA's decision was not contrary to or an unreasonable application of federal law as determined by the Supreme Court, nor was it based on an unreasonable determination of the facts. (Dkt. # 6 at 25).

*ANALYSIS*

**A.    Exhaustion/Evidentiary hearing**

As an initial matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Petitioner presented his claim to the OCCA on direct appeal. Petitioner exhausted his state remedies.

In addition, Petitioner has not met his burden of proving entitlement to an evidentiary hearing. See Williams v. Taylor, 529 U.S. 420 (2000); Miller v. Champion, 161 F.3d 1249 (10th Cir. 1998).

**B.     Claim adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 386 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions." White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (citations omitted).

When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). An unreasonable application by the state courts is "not merely wrong; even 'clear error' will not suffice." White, 134 S. Ct. at 1702 (citing Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)). The petitioner "'must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. (quoting Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011); see also Metrish v. Lancaster, 133 S. Ct. 1781, 1787 (2013)).

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of

4

any indication or state-law procedural principles to the contrary." Richter, 131 S. Ct. at 784-85. Section 2254(d) bars relitigation of claims adjudicated on the merits in state courts and federal courts review these claims under the deferential standard of § 2254(d). Id. at 784; Schriro v. Landrigan, 550 U.S. 465, 474 (2007). Here, Petitioner presented his habeas claim to the OCCA on direct appeal. Because the OCCA addressed Petitioner's claim of ineffective assistance of trial counsel on the merits, the Court will review the claim under the standards of § 2254(d).

As his single ground of error, Petitioner claims he was denied effective assistance of trial counsel "and that the cumulative errors of defense counsel at trial deprived [Petitioner] of a fair trial and reliable verdict." (Dkt. # 2 at 4). Petitioner identifies the same six sub-claims in his habeas petition that he raised on direct appeal. These claims are (1) failure to prepare case and file pre-trial motions; (2) failure to properly conduct voir dire of prospective jurors; (3) failure to analyze case and present opening arguments; (4) failure to understand accident reconstruction testimony, including failure to present appropriate motions in limine and conduct appropriate voir dire of the accident reconstructionist; (5) failure to enter victim's toxicology report into evidence; and (6) failure to allow Petitioner to testify. Id. at 5. The OCCA found Petitioner failed to "show how he was prejudiced by counsel's conduct." (Dkt. # 6-4 at 2).

To be entitled to habeas corpus relief on his claim of ineffective assistance of trial counsel, Petitioner must demonstrate that the OCCA's adjudication of this claim is an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984). See 28 U.S.C. § 2254(d); Richter, 131 S. Ct. 770. "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Richter, 131 S. Ct. at 785 (quoting Williams v. Taylor, 529 U.S. 364, 410 (2000) (O'Connor, J. concurring)). Section 2254(d) "preserves

5

authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther." Id. at 786.

Strickland sets out a two-pronged standard for review of ineffective assistance of counsel claims. A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 131 S. Ct. 770, 792 (2011). This Court's review of the OCCA's decision on ineffective assistance of counsel claims is "doubly deferential." Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (noting that a habeas court must take a "highly deferential" look at counsel's performance under Strickland and through the "deferential" lens of § 2254(d)). If this Court concludes Petitioner fails to satisfy one of the two prongs, it does not need to decide whether

Petitioner satisfies the other. See Strickland, 466 U.S. at 697 ("there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one").

### 1. Failure to prepare case and file pre-trial motions

Petitioner first complains his trial counsel failed to file pre-trial motions. Other than the motions in limine regarding expert testimony and evidence, as will be discussed in more detail below, Petitioner fails to identify what pre-trial motions trial counsel should have filed. See Dkt. # 2. Petitioner cites two Oklahoma state court cases in which the OCCA found trial counsel's conduct fell below that of a reasonably competent defense attorney. Id. at 6 (citing Wilhoit v. State, 816 P.2d 545, 546 (Okla. Crim. App. 1991) (finding a new trial was warranted because trial counsel failed to conduct an investigation and present an absolute defense); Wiley v. State, 199 P.3d 877 (Okla. Crim. App. 2008) (finding ineffective assistance of counsel when counsel failed to: 1) comply with discovery requirements, 2) have DNA independently tested, 3) know identity of witnesses, 4) interview alibi witnesses, 5) know proper sentencing ranges, and 6) conduct adequate voir dire)). Petitioner states that the six failures identified "in the Statement of the Case are so similar to those in Wile[y] as to leave no other conclusion save that counsels [sic] failures so undermined the proper functioning of the adversarial process that the trial could not have been relied upon as having produced a just result." Id.

Petitioner's habeas claim is conclusory. Stating that claims "are so similar" is insufficient to support a claim of ineffective assistance of counsel. Petitioner's direct appeal brief is equally conclusory and lacks any specific allegations as to what Petitioner's trial counsel failed to file or failed to investigate in preparation for trial. See Dkt. # 6-1. These conclusory allegations are

7

insufficient to meet the prejudice prong of Strickland. Bromley v. Phillips, 528 F. App'x 956, 959 (10th Cir. 2013) (unpublished)[2] (citing United States v. Fisher, 38 F.3d 1144, 1147 (10th Cir. 1994)). Petitioner fails to show there is a reasonable probability that the result of the proceeding would have been different. Thus, Petitioner fails to satisfy the second prong of Strickland. Habeas relief is denied.

2.  **Failure to conduct proper voir dire of prospective jurors**

Petitioner next claims his trial counsel was ineffective for failing to conduct proper voir dire of prospective jurors. Petitioner argues "[t]he purpose of voir dire examination is to ascertain whether there are grounds to challenge prospective jurors for cause and to permit the intelligent use of peremptory challenges." (Dkt. # 2 at 7). Petitioner identifies thirty-one areas that must be used to prepare questions for prospective jurors during voir dire. Id. at 7-8. He argues that "'[f]ailure to prepare in this manner will surely eliminate the ability to fully determine the inherent biases and prejudices . . . and defense counsel will not properly exercise his duty to his client in the jury selection process.'" Id. at 9 (quoted source not provided).

Petitioner identifies two specific complaints about the way in which his trial counsel conducted voir dire. First, Petitioner complains that "defense counsel only asked questions in a perfunctory and statement-like manner and did not elicit one response from any prospective juror to any of his questions." Id. at 9. Second, he complains that his trial counsel told the jury, "the State, as the judge has already instructed you, has the burden of proving this case beyond a reasonable doubt. Likewise, the Defendant only has to prove that there is a reasonable doubt as to

---

[2]This and all other unpublished opinions are not precedential but are cited for their persuasive value. See FED. R. APP. P. 32.1; 10th Cir. R. 32.1.

the elements of the crime." Id.; see also Dkt. # 8, Tr. Vol. I at 49-50. Petitioner ultimately argues, "[d]efense counsel passed the prospective jurors for cause without making any attempt whatsoever to determine if there was any cause challenge." Id.

"An attorney's actions during voir dire are considered to be matters of trial strategy." Nguyen v. Reynolds, 131 F.3d 1340, 1349 (10th Cir. 1997). As a matter of trial strategy, a petitioner cannot show counsel was ineffective unless the petitioner shows the strategy is "so ill chosen that it permeates the entire trial with obvious unfairness." Id. After a review of the record and Petitioner's claims, the Court finds that Petitioner fails to show he was prejudiced by trial counsel's voir dire. The record shows the trial court conducted an in depth, individual voir dire of each prospective juror, inquiring into their professions, family, past experiences with law enforcement, past experiences serving on juries, familiarity with the parties or each other, and whether there was any reason they could not be fair and objective while serving on Petitioner's jury. (Dkt. # 8, Tr. Vol. I at 9-34; 54-58). The record also shows the jurors were predominantly silent to the questions asked by both the prosecutor and defense counsel. The jurors gave verbal responses only when asked a direct question. Even so, defense counsel asked appropriate questions. His questions included whether the jury could follow the court's instructions, if they could use only the facts presented at trial during deliberations, and whether they could wait until all of the evidence, including defense evidence, was presented before making a decision. See id. at 48-54.

Defense counsel did err when he stated that "Defendant only has to prove that there is a reasonable doubt as to the elements of the crime." (Dkt. # 8, Tr. Vol. I at 49-50). However, the trial court immediately called counsel to the bench and informed him of the error. Counsel in turn, corrected himself by telling the jury, "[i]n all reality, the Defendant doesn't have to prove anything,

9

correct?" Id. at 50-51. Counsel continued, "[h]e remains here innocent before us. Does anyone have a problem starting with that presumption that he is innocent?" Id. at 51. Counsel concluded this portion of his voir dire by stating, "[w]ould each of you hold us to . . . the letter of the instruction that the judge gives you?" Id. Additionally, following the completion of voir dire, the trial court instructed the jury that the burden of proof rested with the State. Id. at 67. Any damage done by trial counsel's misstatement was swiftly and properly corrected.

The Court concludes that Petitioner cannot show he was prejudiced by trial counsel's voir dire. Petitioner does not allege any of the jurors harbored any bias, held prejudice against him, or was unsuitable to serve as a juror. Petitioner does not allege that trial counsel's misstatement regarding the burden of proof resulted in an unfair jury deliberation. The Court finds that the trial court promptly responded to trial counsel's error and trial counsel immediately corrected the error. Finally, Petitioner fails to show that trial counsel's actions "permeat[ed] the entire trial with obvious unfairness." Nguyen, 131 F.3d at 1349. Habeas relief is denied.

### 3. Failure to analyze case and give opening statement

Petitioner next complains that trial counsel was ineffective because he failed to make an opening statement. Petitioner exclaims, "[i]f you have a theory of the case, the rule is: MAKE AN OPENING STATEMENT!" (Dkt. # 2 at 9). Petitioner argues the "primary purpose of an opening statement is . . . to share with the jury the issues and a storybook summary of what is believed can support [sic] with competent testimony and admissible evidence." Id. at 10. Petitioner states that opening statement is counsel's "chance to talk to the carefully selected and thoughtful group of jurors . . . [and] give them . . . guidance." Id. Petitioner concludes by stating, "[c]ounsel cannot afford to squander the opportunity provided by the opening statement." Id.

10

"[I]t is well-settled that the decision to waive an opening or closing statement is a commonly adopted strategy, and without more, does not constitute ineffective assistance of counsel." Fox v. Ward, 200 F.3d 1286, 1296 (10th Cir. 2000) (citing Nguyen, 131 F.3d at 1350; United States v. Haddock, 12 F.3d 950, 955 (10th Cir. 1993; United States v. Miller, 907 F.2d 994, 1000 (10th Cir. 1990)). Respondent argues the rationale of the Tenth Circuit in Malicoat v. Mullin, 426 F.3d 1241 (10th Cir. 2005) is instructive. In Malicoat, a capital case, petitioner raised a claim of ineffective assistance of trial counsel for failing to make an opening statement. The Tenth Circuit stated that "under the circumstances, the challenged action might be considered sound trial strategy." Id. at 1260. The Tenth Circuit explained that the decision to waive "appear[ed] sound . . . [because] the prosecution's evidence was overwhelming, and there was little dispute as to the relevant facts . . . and little indicated that Mr. Malicoat had a plausible defense to offer." Id. at 1261. The Circuit found that "counsel might reasonably have concluded that, in order to be more persuasive to the jury at sentencing, it was preferable to refrain from making a fruitless opening statement during the guilt phase." Id. After considering the record, the Court finds Respondent's argument persuasive.

The State presented overwhelming evidence of Petitioner's guilt and Petitioner stipulated to key facts. First, three witnesses observed Petitioner driving the truck, backwards, at an elevated rate of speed with the victim sitting or crouching in the bed of the truck. Second, Petitioner stipulated that the victim died as a result of "injuries received during an accident involving a motor vehicle driven or operated by the Defendant" and stipulated that he had a blood alcohol level of 0.11, higher than the legal limit. (Dkt. # 8, Tr. Vol. I at 143-44). Finally, trial counsel initially deferred opening statements at the beginning of trial and waived the opening statement after the State presented its evidence. When trial counsel waived opening statement, he stated, "[i]t's not necessary

11

for an opening." (Dkt. # 8-1, Tr. Vol. II at 199). Petitioner fails to show he was prejudiced by counsel's waiver of opening statement in light of the record before the Court. Additionally, the OCCA concluded Petitioner failed to show he was prejudiced by trial counsel's decision and Petitioner fails to show why this conclusion was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. Habeas relief is denied.

### 4. Failure to prepare for expert witness cross-examination

Petitioner next complains that trial counsel was ineffective because he "made no effort to test the validity of any of the testimony proffered by Troopers of the Oklahoma Highway Patrol." (Dkt. # 2 at 10). Petitioner claims that the reports submitted to trial counsel in discovery contained numerous pages of "mathematical calculations and formulary" and argues,

> There is no evidence . . . that defense counsel attempted to educate himself on the identification of skidmarks, documentation and measurements, terms and definitions relating to tiremarks, investigations, determination of coefficient o[f] friction, and speed estimation or how to obtain the length of the accident skid using field measurements; how to determine the drag factor for skidding tires; how to determine the skid resistance for skidding tires; and how to determine the minimum speed for the accident skidmark.

Id. at 11. Petitioner argues "[t]his information would have been essential to deal with the testimony from the Troopers that purported to be 'expert' in nature." Id.

Within this general claim, Petitioner raises two sub-claims of ineffective assistance of counsel: (1) failure to present appropriate motions in limine and (2) failure to conduct appropriate voir dire of the highway patrol accident reconstruction and investigation witnesses. Id. at 5. In furtherance of these sub-claims, Petitioner argues that trial counsel should have "attempt[ed] to a

[sic] Daubert-Kuhmo³ analysis." Id. at 11. Petitioner argues defense counsel had a "duty and responsibility to move the Trial court to 'demand a valid scientific connection to the pertinent inquiry as precondition to admissibility.'" Id. (citing Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)).

The State presented testimony and exhibits from three Oklahoma Highway Patrol (OHP) Troopers, each with expertise in various components of accident reconstruction. However, Petitioner appears to focus exclusively on the testimony of Berry Heath, an Executive Officer of the Investigation Division of OHP. Heath's expertise was requested because of one of his "specialties" includes collision reconstruction with spin analysis. (Dkt. # 8, Tr. Vol. I at 114). Heath shared with the jury his extensive training over a 17 year career with OHP, including more than 2,700 hours of advanced training and the reconstruction of over 500 collisions. Id. at 112-13. Heath also testified that he had served as an accident reconstruction expert in court many times. Id. at 113. Additionally, Heath testified that he "instruct[s] at the [OHP] academy and teach[es] the reconstruction of collisions in a specific area of spin analysis, and that's when a car is spinning out of control but not actually braking." Id. at 114. Heath then testified that, based on his training, expertise, and calculations, Petitioner's truck was traveling between 32 and 35 mph when it was spinning around in the road. Id. at 126.

Petitioner claims Heath gave unchallenged hearsay testimony. Petitioner states that defense counsel asked Heath, "[a]ll of the information you got or that you used in your calculation was based upon what Mr. Loftis and Mr. Holt[, the two other OHP Troopers who testified,] gave to you;

---

³Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999).

13

correct?" (Dkt. # 2 at 12 (citing Dkt. # 8, Tr. Vol. I at 129)). Heath responded, "[y]es, sir." Petitioner then argues that his trial counsel failed to use the analysis applied in Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999). (Dkt. # 2 at 13). Namely, trial counsel failed to deal with the Daubert "factors [which] may apply to the testimony of engineers and other experts who are not scientists." Id. at 12.

The record shows that Petitioner's trial counsel conducted cross-examination of all three OHP Troopers, including Heath. When cross-examining Heath, defense counsel obtained Heath's admission that he had not visited the scene to verify the measurements conveyed to him by the other two OHP Troopers. (Dkt. # 8, Tr. Vol. I at 129). Defense counsel also asked whether weight was a factor in the calculation of speed. Id. at 130. Though defense counsel's cross-examination was brief, Petitioner fails to explain how counsel should have cross-examined Heath, what information would have been revealed from a more thorough cross-examination, or how that information would have resulted in a different outcome. Without more, Petitioner's claim is conclusory and fails to show how he was prejudiced by counsel's brief cross-examination.

The Court reaches the same conclusion on Petitioner's claim that trial counsel should have filed "a Motion in Limine to Exclude Junk Science and Related Evidence of Accident Reconstruction as a Matter of Law." (Dkt. # 2 at 11). Petitioner does not explain why he believes the uncontested, expert opinion was based on "junk science" nor does he explain why the motion in limine would have been successful.

Petitioner's claim that his trial counsel allowed Heath to give unchallenged hearsay testimony is also meritless. Hearsay is an out-of-court statement offered "to prove the truth of the matter asserted." OKLA. STAT. tit. 12, § 2801(3). Heath's testimony in response to defense

counsel's question was not hearsay because it did not introduce any out-of-court statements by Loftis or Holt into the trial record. There is also no Confrontation Clause concern because Loftis and Holt testified at Petitioner's trial and were subject to cross-examination. This claim is without merit.

Finally, Petitioner fails to show he was prejudiced by trial counsel's failure to "conduct appropriate voir dire of the [expert witnesses] for the purposes of attempting to limit their testimony." (Dkt. # 2 at 5). Petitioner appears to argue that it was not conclusively shown that Heath's calculation formula or analysis technique is used or accepted among accident reconstruction experts. See Dkt. # 2 at 13 (citing Kumho Tire, 526 U.S. at 157 ("there is no indication in the record that other experts in the industry use Carlson's *particular* approach or that tire experts normally make the very fine distinctions necessary to support his conclusions, nor are there references to articles or papers that validate his approach"). This assertion lacks reason and merit. Each expert testified as to their experience, training, and qualifications as an expert witness, in accordance with Oklahoma law. See Marr v. State, 741 P.2d 884, 886 (Okla. Crim. App. 1987) ("it is necessary to qualify him as an expert in the field for which his opinion testimony is sought"). Heath was asked to perform the spin analysis by OHP Trooper James Loftis, the lead reconstruction expert on the case, because Heath "had been trained in that particular formula." (Dkt. # 8, Tr. Vol. I at 101). Loftis testified that he was trained on that formula as of the time of Petitioner's trial. Id. Additionally, as mentioned above, Heath testified that he "instruct[s] at the [OHP] academy and teach[es] the reconstruction of collisions in a specific area of spin analysis, and that's when a car is spinning out of control but not actually braking." Id. at 114. In as much as Petitioner is claiming Heath's calculation was not proven or was out of the industry norm, it is clear from the testimony

at trial that Heath utilized a method of calculation endorsed by OHP and used by other OHP Troopers. In as much as Petitioner is claiming counsel failed to conduct voir dire of the expert witnesses, nothing in the record indicates that witnesses did not possess the knowledge necessary to give a reliable expert opinion. See Kumho Tire, 526 U.S. at 147. Petitioner's claims are meritless.

After reviewing the record, the Court finds nothing to indicate these witnesses gave improper expert testimony, nor does Petitioner allege their testimony was improper or based on erroneous facts. Had Petitioner's trial counsel objected to Heath and the others as expert witnesses, the objection would have been overruled in light of their qualifications and experience. Petitioner's conclusory allegation that trial counsel was ineffective for failing to "conduct appropriate voir dire" of the expert witnesses fails to show he was prejudiced by trial counsel's alleged failure.

In summary, Petitioner claims that trial counsel was ineffective for failing to "analyze and understand the accident reconstruction testimony," "present appropriate Motions in Limine," and "conduct appropriate voir dire of the Highway Patrol accident reconstruction and investigation witnesses." (Dkt. # 2 at 5). However, after a review of the record, Petitioner fails to show how he was prejudiced by these alleged failures, nor does Petitioner demonstrate that the OCCA's denial of relief was contrary to, or an unreasonable application of, federal law. Therefore, habeas relief is denied.

        5.       **Failure to introduce victim's toxicology report**

Next, Petitioner claims trial counsel "undermined the adversarial process and allowed the prosecutor to hammer away at the defendant with no opposition from defense counsel." (Dkt. # 2 at 14). Petitioner argues that had defense counsel introduced this the victim's toxicology report, "it would have demonstrated that both the defendant and the deceased were seriously impaired and

16

would have allowed further inquiry into the nature of their activities on the country road on the 11th of July, 2008." Id. at 13. Respondent argues Petitioner's claim is conclusory because "Petitioner makes no allegation as to what any further inquiry might have revealed, or how it would have impacted the outcome of the case." (Dkt. # 6 at 22). The Court agrees.

It is not clear how further inquiry into the victim's intoxication would have impacted the outcome of Petitioner's trial. Petitioner does not claim that further inquiry would have resulted in an acquittal. The jury was instructed that:

> No person may be convicted of manslaughter in the first degree unless the State has proved beyond a reasonable doubt each element of the crime. The elements are:
>
>> First, the death of a human;
>> Second, occurring as a direct result of an act or event which happened in the commission of a misdemeanor;
>> Third, caused by the Defendant, while in the commission of a misdemeanor;
>> Fourth, the elements of the Underlying Misdemeanor - Driving a Motor Vehicle with Alcohol Concentration of .08 or More Defendant is alleged to have been in the commission are as follows:
>> First, driving;
>> Second, with a blood or breath alcohol concentration of .08 or more;
>> Third, a motor vehicle;
>> Fourth, on a public road; and
>> Fifth, the blood or breath alcohol test was administered on a sample taken from the Defendant as soon as practical after the fatality/injury accident.

(Dkt. # 8-1, Tr. Vol. II at 216-17). Petitioner stipulated that he was intoxicated when he was driving and that the victim was killed as a result of the injuries sustained when she was thrown from the back of his truck. These are material facts that support Petitioner's conviction. The victim's intoxication had no role in Petitioner's guilt or innocence.

As to sentencing, Petitioner fails to show how the victim's intoxication and further inquiry into the "nature of their activities" would have impacted his sentence. Petitioner does not claim that

the inquiry would have resulted in a lesser sentence recommendation from the jury nor does Petitioner claim further inquiry would have resulted in the trial court modifying the recommended sentence. Petitioner simply states that further inquiry would have occurred had defense counsel introduced the victim's toxicology report. This is insufficient to show Petitioner was prejudiced by trial counsel's failure. It is also insufficient to demonstrate that the OCCA's determination was contrary to, or an unreasonable application of, federal law. Habeas relief is denied.

### 6. Failure to allow Petitioner to testify at trial

Petitioner's final claim of ineffective assistance of trial counsel is that trial counsel failed to "prepare[] both himself and [Petitioner] to testify." (Dkt. # 2 at 14). Petitioner claims that had trial counsel completed these preparations, Petitioner's "testimony would have been evaluated and he himself would have been viewed by the jurors and this would have introduced the concept of 'adversary' into this process." Id.

"Due process of law protects the right to testify on one's own behalf at a criminal trial." Battle v. Sirmons, 304 F. App'x 688, 693 (10th Cir. 2008) (unpublished) (citing Rock v. Arkansas, 483 U.S. 44, 51 (1987)). "The decision whether to testify lies squarely with the defendant; it is not counsel's decision." Cannon v. Mullin, 383 F.3d 1152, 1171 (10th Cir. 2004). Thus, if Petitioner's counsel did prevent him from testifying, it would satisfy the first prong of Strickland. Id. However, Petitioner must also satisfy the second prong of Strickland in order to be entitled to habeas relief.

Petitioner fails to show he was prejudiced by trial counsel preventing him from testifying. Petitioner fails to state what he would have said in his testimony and how his testimony would have resulted in a different outcome. He only claims his testimony "would have introduced the concept of 'adversary' into this process." (Dkt. # 2 at 14). The OCCA found that Petitioner had not

18

established prejudice and Petitioner offers nothing in his habeas petition to show that the OCCA's decision was an unreasonable application of, or contrary to, federal law. Having failed to satisfy his burden, Petitioner's claim for habeas relief is denied.

## C. Certificate of appealability

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA is debatable among jurists of reason. See Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004). The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability is denied.

## *CONCLUSION*

After careful review of the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Clerk of Court shall note on the record the substitution of Robert Patton, Director, as party respondent in place of David C. Miller, Warden.

2. The petition for writ of habeas corpus (Dkt. # 2) is **denied**.

3. A separate judgment in favor of Respondent shall be entered in this matter.

4. A certificate of appealability is **denied**.

**DATED** this 7th day of July, 2014.

**TERENCE KERN**
**United States District Judge**